```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  12/13/13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GLYNN JONES,                                    :
                              Plaintiff,         :
                                                 :      REPORT AND RECOMMENDATION
              -against-                          :
                                                 :      13 Civ. 2247 (PAC) (JLC)
HARISH MOORJANI,                                 :
SUNDARAM RAVIKUMAR, and                          :
MOUNT VERNON HOSPITAL,                           :
                                                 :
                              Defendants.         :
------------------------------------------------------------x

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Paul A. Crotty, United States District Judge:**

Plaintiff Glynn Jones, proceeding pro se and in forma pauperis ("IFP"), brings this action

under 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendments rights. At

the time he filed this lawsuit, Jones was a prisoner in Fishkill Correctional Facility's ("Fishkill")

Long Term Care Unit in Dutchess County, New York. Jones alleges in his complaint that he

suffered serious bodily injury after Defendants Harish Moorjani, Sundaram Ravikumar, and

Mount Vernon Hospital ("Mount Vernon") provided unwanted and unauthorized medical

treatment during Jones' incarceration. Currently before the Court are two separate motions: first,

Defendants Moorjani and Ravikumar (referred to collectively as "Defendants") move to revoke

Jones' IFP status based on his past filings of non-meritorious lawsuits under the so-called "three

strikes" provision of the Prison Litigation Reform Act ("PLRA"); second, Jones moves for a

default judgment against Ravikumar and Mount Vernon. For the reasons set forth below, I

recommend that Defendants' motion to revoke Jones' IFP status and Jones' motion for default

judgment both be denied.

## I.   BACKGROUND

### A. Jones' Litigation History

Jones has been a frequent litigant in the federal courts and has three other actions currently pending in this District, including one in which a motion to revoke his IFP status is also sub judice.[1] A review of the federal judiciary's Public Access to Court Electronic Records System ("PACER") indicates that Jones has been a plaintiff in at least 21 separate actions since 1997, mostly in the Southern and Eastern Districts of New York.[2] Among Jones' filings, five actions were at least partially dismissed with prejudice for failure to state a claim and, as discussed below, are singled out by Defendants in support of their motion to revoke Jones' IFP status.[3] As to the rest of the list: one action was Jones' petition for writ of habeas corpus challenging his conviction and incarceration;[4] four actions ended with monetary settlements for

---

[1]   Jones v. Avanzato, No. 12 Civ. 2087 (NSR) (S.D.N.Y.) (motion to revoke IFP pending); Jones v. Putnam Hosp., No. 13 Civ. 5370 (unassigned) (S.D.N.Y.); Jones v. Connolly, No. 13 Civ. 6355 (unassigned) (S.D.N.Y.).

[2]   There is some duplication in this list, as two actions brought by Jones in the Southern District were eventually transferred to and reopened as new cases in other districts, while another action was deemed substantially similar to an existing filing. See Jones v. City of N.Y., No. 99 Civ. 11737 (S.D.N.Y. Dec. 2, 1999) (transferred and opened as No. 99 Civ. 8281 (E.D.N.Y.) (filing fee paid); Jones v. Doe I, No. 99 Civ. 11977 (S.D.N.Y. Dec. 13, 1999) (transferred and opened as No. 99 Civ. 2213 (N.D.N.Y. 2002) (dismissed for failure to prosecute)); Jones v. Comm'r of N.Y.C. Dep't of Corr., No. 00 Civ. 1230 (S.D.N.Y. Feb. 18, 2000) (deemed substantially similar to previously filed suit No. 99 Civ. 11737).

[3]   Jones v. City of N.Y., No. 10 Civ. 3940 (S.D.N.Y. May 12, 2010); Jones v. Connolly, No. 09 Civ. 3287 (S.D.N.Y. Feb. 16, 2010); Jones v. N.Y.C. Police Dep't., No. 09 Civ. 3504 (E.D.N.Y. Dec. 15, 2009); Jones v. Fischer, No. 07 Civ. 7589 (S.D.N.Y. Aug. 7, 2008); and Jones v. City of N.Y., No. 00 Civ. 6872 (S.D.N.Y. Sept. 13, 2000).

[4]   Jones v. Portuando, No. 97 Civ. 1703 (E.D.N.Y. Aug. 15, 1997).

Jones;[5] Jones voluntarily withdrew one case;[6] and the remaining actions were all variously

dismissed with and without prejudice on grounds that are not relevant here.[7]

### B. Jones' Complaint

Jones' allegations in the instant matter stem from medical treatment he received

beginning in September 2012 from physicians Moorjani and Ravikumar at Mount Vernon.[8]  At

that time, Jones already had an arteriovenous graft ("AV-graft") on his left forearm that enabled

him to receive dialysis. (Complaint (Dkt. No. 2), at ¶ 10).  Following the discovery of decreased

blood flow in his AV-graft during a routine test at Fishkill in September 2012, Jones was taken

to Ravikumar's office in Dobbs Ferry, where he received a de-clotting procedure involving

punctures made to his forearm around the area of the AV-graft.  (Id. at ¶¶ 12, 14).   Upon

discovery by a nurse at Fishkill the following day that the AV-graft had nonetheless become

---

[5]    Jones v. City of N.Y., No. 08 Civ. 236 (E.D.N.Y. June 24, 2008) (filed as a nonprisoner and settled for $13,000); Jones v. City of N.Y., No. 09 Civ. 2453 (E.D.N.Y. 2012) (settled for unknown amount); Jones v. John Roe, No. 97 Civ. 4071 (S.D.N.Y. Oct. 28, 1999) (settled for $80,000); Jones v. City of N.Y., No. 03 Civ. 5631 (S.D.N.Y. Mar. 11, 2004) (settled for $9,500).

[6]    Jones v. N.Y.C. Police Dep't., No. 09 Civ. 3504 (E.D.N.Y. Feb. 9, 2010) (filed while not a prisoner).

[7]    Jones v. Scotland Cnty. Super. Ct., No. 07 Civ. 816 (M.D.N.C. Oct. 25, 2007) (dismissed without prejudice with leave to refile); Jones v. State of N.C., No. 07 Civ. 898 (M.D.N.C. Mar. 26, 2008) (same); Jones v. Doe I, No. 99 Civ. 2213 (N.D.N.Y. 2002) (dismissed for failure to prosecute); Jones v. City of N.Y., No. 99 Civ. 8281 (E.D.N.Y. March 16, 2000) (fee-paid action dismissed with prejudice under the PLRA) and Jones v. Comm'r of N.Y.C. Dep't of Corr., No. 00 Civ. 370 (E.D.N.Y. March 16, 2000) (same).

[8]    The Court observes that upon first blush, it is unclear if the allegations concerning Jones' medical treatment rise to the level of a constitutional violation as opposed to asserting only state law malpractice claims. See Hathaway v. Coughlin, 37 F.3d 63, 68 (2d Cir. 1994) (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976)).  While this issue is a threshold and potentially dispositive one, the Second Circuit has adopted a two-step process that requires courts to weigh "whether a plaintiff qualifies for in forma pauperis status" independently and before determining "whether his claims have merit." Potnick v. E. State Hosp., 701 F.2d 243, 244 (2d Cir. 1983).  The Court accordingly considers Defendants' motion to revoke Jones' IFP status herein without regard to the underlying merits of his claims.

fully blocked, Jones was transported to the emergency room at Mount Vernon, where he was fitted with a temporary catheter so that he could be dialyzed. (Id. at ¶¶ 15-16, 18).

Ravikumar, who is also a surgeon at Mount Vernon, reexamined Jones and, telling him that "I know what went wrong during the last procedure" and "I know exactly where the problem is," performed two additional de-clotting procedures over the next week. (Id. at ¶¶ 19-20, 25). Jones asserts that he had no knowledge as to what kind of surgery was performed on him and that he never gave his consent to the procedures, explicitly telling Ravikumar before the final operation: "it is clear that . . . you cannot fix the problem you created." (Id. at ¶¶ 23-24). Nonetheless, Jones claims, he was sedated and given the procedure, while being led to believe that he was being fitted with a "perma catheter" so that he could be transferred to Westchester County Medical Center ("WCMC"), where his AV-graft had first been inserted. (Id. at ¶¶ 23-25). The three procedures performed at Mount Vernon resulted in a six-inch wound and a total of 25 staples in Jones' arm. (Id. at ¶¶ 20, 25).

According to his complaint, Jones is also a bone marrow transplant recipient, making him vulnerable to low red blood cell and hemoglobin levels. (Id. at ¶ 28). Jones alleges that during his nine-day admission at Mount Vernon, where he was under the care of Moorjani, regular blood tests revealed that Jones' red blood cell and hemoglobin counts were deteriorating, but he was not given appropriate treatment. (Id. at ¶¶ 28-29). Jones was eventually given two blood transfusions, fitted with a perma catheter, and transferred to WCMC on October 12, 2012, where he was placed under the care of a Dr. Ahmed, the physician who had carried out his bone marrow transplant. (Id. at ¶¶ 30, 34-36). Ahmed allegedly informed Jones that his red blood cells were "being killed" as a result of Mount Vernon's failure of to administer to Jones the drug Epoetin, as Ahmed had ordered. (Id. at ¶ 38).

4

Jones further alleges that he was discharged from WCMC on October 17, with the understanding that he might have to be readmitted in two weeks for an AV-graft revision or if his hemoglobin levels reached a certain point. (Id. at ¶ 39). Jones claims that he was never returned to WCMC as directed until December 26, 2012, when he was taken to the emergency room by ambulance for a "fever and a productive cough." (Id. at ¶ 40). A vein-mapping study was conducted, during which someone from the "vascular" unit stated that the AV-graft on Jones's left arm was "not repairable" and that "the surgeon at Mount Vernon Hospital really screwed up." (Id.)

As a result of the unauthorized procedures and the treatment he received from Defendants, Jones claims, he has been left with "a great deal of pain" in his left arm, numbness, an involuntary twitch, and the loss of some use of his left hand. (Id. at ¶ 42). Jones seeks $25 million in compensatory damages and attorney's fees. (Id. at ¶ 56).

### C. Procedural History

Jones filed his complaint on April 4, 2013, was subsequently granted IFP status, and allowed to proceed without having to prepay the entire filing fee. (Order Granting IFP Application (Dkt No. 4)). The U.S. Marshal's Service served Defendants Moorjani and Ravikumar on behalf of Jones on June 12 and June 17, 2013 respectively. (Marshal's Process Receipt (Dkt Nos. 10, 12)). Service on the remaining Defendant, Mount Vernon, was not made until August 19, 2013. (Marshal's Process Receipt (Dkt. No. 27)). By notice of motion dated July 15, 2013, Jones moved for default judgment as to Defendants Ravikumar and Mount Vernon, filing an affirmation in support. (Dkt No. 18). Moorjani and Ravikumar filed their answer on July 19, 2013 (Dkt. No. 19), but to date, Mount Vernon has not filed an answer or otherwise responded to Jones' complaint.

On July 10, 2013, Defendants Moorjani and Ravikumar moved to revoke Jones' IFP status, stay this action until Jones pays the full filing fee, and dismiss the case if he fails to do so. (Dkt. No. 15). Defendants filed a memorandum of law ("Defs.' Mem.") in support of their motion. (Dkt No. 16). Jones submitted an affirmation in opposition on July 25 along with supplemental letters on August 8 and 9 (Dkt Nos. 21, 25, 26), and Moorjani and Ravikumar submitted a reply memorandum of law ("Defs.' Rep. Mem.") on July 31. (Dkt No. 22). Thereafter, by letter dated November 25, 2013, Jones advised the Court that he was no longer incarcerated and, as such, he was "no longer required to pay a filing fee." (Letter to Hon. Paul A. Crotty, dated Nov. 25, 2013 (Dkt. No. 30)).[9] Counsel for Defendants responded by letter dated November 29, 2013, arguing that the PLRA's three strikes provision still applied despite Jones' release from prison. (Letter to Hon. Paul A. Crotty, dated Nov. 29, 2013 (Dkt No. 29)).[10]

## II.   DISCUSSION

### A. Motion to Revoke Jones' IFP Status

By waiving filing fees for qualifying prisoners of limited financial means, the IFP statute was "designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989); see generally 28 U.S.C. § 1915. However, concerned by the resulting rise of an "outsize share of [prisoner] filings" and a "flood of nonmeritorious claims," Congress enacted the PLRA in 1996 in order to curb abuses of the IFP privilege and ensure "fewer and better prisoner suits."

---

[9]    Jones also requested permission to amend his complaint for the sole purpose of changing his address.

[10]    As discussed below, see infra II.A.3, whether the three strikes provision shall be applied to a particular action turns on the plaintiff's prisoner status at the time of filing, irrespective of subsequent release or incarceration during the pendency of the case. Thus, because Jones was in prison at the time he filed this lawsuit, the motion to revoke is not moot and the Court will proceed to adjudicate it.

Jones v. Bock, 549 U.S. 199, 203 (2007). In particular, the PLRA included the three strikes provision, which stated:

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Placing a cap on access to unlimited fee waivers, the three strikes provision was meant to deter frivolous prisoner actions "by forc[ing] prisoners to go through the same thought process non-inmates go through before filing a suit, i.e., is filing this suit worth the costs?" Tafari v. Hues, 473 F.3d 440, 443 (2d Cir. 2007) (quoting Rodriguez v. Cook, 169 F.3d 1176, 1181 (9th Cir. 1999)). Further amendments also required prisoners granted IFP status to pay the filing fee in monthly installments as future funds become available, 28 U.S.C. § 1915(b)(1), and made dismissal of actions that fail to state a claim mandatory by district courts. 28 U.S.C. § 1915(e)(2)(B) (replacing § 1915(d)); see Pub.L. No. 104-134, 110 Stat. 1321 (1996).

In Tafari, the Second Circuit examined the language of the three strikes provision and assessed the types of dismissals for which a strike may be incurred under § 1915(g). 473 F.3d at 442. It defined a *frivolous* action as one that "advances inarguable legal conclusion[s] or fanciful factual allegation[s]," and a *malicious* action as a case that is "filed with the intention or desire to harm another." Id, (internal quotation marks and citations omitted). The Circuit concluded that the phrase "fails to state a claim upon which relief may be granted" explicitly references the standard for dismissal on the pleadings under Fed. R. Civ. P. 12(b)(6). Id. Reviewing these standards for assigning strikes, the court emphasized that the three strikes provision "was designed to stem the tide of egregiously meritless lawsuits, not those temporarily infected with remediable procedural or jurisdictional flaws." Id. at 443. In other words, strikes under

7

§ 1915(g) are "intended for nonmeritorious suits dismissed with prejudice," that is, the type of dismissal "that *finally* terminates the action because of a determination that it ultimately cannot succeed." Snider v. Melindez, 199 F.3d 108, 111 (2d Cir. 1999) (emphasis in original). Furthermore, the court observed that dismissals without prejudice, for a premature appeal or failure to first exhaust administrative remedies, for instance, do not constitute strike-worthy outcomes. See Tafari, 473 F.3d at 444 (prematurity is a jurisdictional defect, not the kind of clearly baseless suit Congress intended to target with PLRA); Snider, 199 F.3d at 111 (failure to exhaust does not equate to a failure to state a claim, is remediable, and is not frivolous); see also Jones, 549 U.S. at 223 (PLRA does not require dismissal of entire complaint because of failure to exhaust some but not all claims).

Defendants contend that Jones should be barred from proceeding IFP because five of his previous actions, dating from 2000 to 2010, were dismissed for reasons that qualify them as strikes under § 1915(g). (Defs.' Mem., at 2; Defs.' Rep. Mem., at 2-4).[11] Two of these cases constitute clear strikes in which Jones, having been granted IFP status, was unable to state a claim upon which relief may be granted; however, one is unambiguously not a strike because Jones, though proceeding IFP, was not incarcerated at the time of its filing. The remaining two represent novel and more difficult questions and require interpretations of the intended reach of certain elements of the three strikes provision that the Second Circuit has yet to address directly. The Court considers each of the actions identified by Defendants in turn.

---

[11]   As Defendants point out, the fact that Jones has already been granted IFP status does not preclude revocation of that status and conditional dismissal of the action if he cannot subsequently pay the fee. Defs.' Mem., at 3 (citing Polanco v. Burge, 2006 WL 2806574, at *2 (N.D.N.Y. Sep. 28, 2006)).

### 1. **2010 City of N.Y. Action, Explicit Dismissal under § 1915: Strike One**

Proceeding IFP in Jones v. City of N.Y., No. 10 Civ. 3940 (S.D.N.Y. May 12, 2010),

Jones brought suit for psychological and physical injuries from unwanted sexual advances by a

corrections officer who allegedly forced him to marry her. (Complaint (Dkt. No. 2)). The

complaint was dismissed sua sponte upon initial screening by Chief Judge Loretta Preska, who

noted that the Eastern District of New York had already dismissed a similar suit as "factually

frivolous and untimely." (Order of Dismissal (Dkt. 3), at 1).[12] Concluding that venue in this

district was improper and that in any event the claims lacked merit, the court dismissed the

complaint for failure to state a claim on which relief may be granted, and cautioned Jones against

further filing of non-meritorious actions. (Id. at 3). The court also dismissed the action

explicitly under § 1915(e)(2)(B)(ii), which mandates dismissal of prisoner actions that fail to

state a claim. (Id.). This case therefore undoubtedly qualifies as a strike under § 1915(g). See,

e.g., Toliver v. Comm'r of N.Y.C. DOC, 2011 WL 2493571, at *1 (S.D.N.Y. June 21, 2011);

Partee v. Connolly, 2009 WL 1788375, at *2 (S.D.N.Y. June 23, 2009).

### 2. **Connolly Action, Dismissal for Failure to State a Claim: Strike Two**

In Jones v. Connolly, No. 09 Civ. 3287 (S.D.N.Y. Feb. 16, 2010) (hereinafter referred to

as Connolly), Jones, proceeding IFP, asserted that his Eighth and Fourteenth Amendment rights

were violated when he suffered physical injuries after falling on a broken step while incarcerated

at Fishkill. (Complaint (Dkt. No. 2)). In response to Defendants' motion to dismiss, Jones

"respectfully request[ed] th[e] Court to dismiss [his] complaint without prejudice and open any

doors for [a] pendent state law negligence claim . . . which can be brought in [the] New York

---

[12]     The prior action in the Eastern District of New York, Jones v. City of N.Y., No. 99 Civ.
8281 (E.D.N.Y. March 16, 2000), despite being dismissed as frivolous, is not deemed a strike
against Jones because he paid the filing fee in that action. See infra II.A.5 (discussing whether
fee-paid actions fall under the ambit of the three strikes provision).

Court of Claims." (Jones Reply (Dkt. 30), at 2). Shortly thereafter, Judge Shira Scheindlin held

that Jones' claims were "classic negligence allegations" that did not rise to the level of "gross

negligence" and thus could not "trigger the protection of the Constitution." (Order of Dismissal

(Dkt. 29), at 2-3). Jones' action was therefore dismissed with prejudice under Fed. R. Civ. P.

12(b)(6) and, to the extent that the complaint was liberally construed to include state law claims,

the court declined to exercise supplemental jurisdiction and dismissed them without prejudice.

(Id. at 3). Because Connolly was dismissed for failure to state a claim, the dismissal also

unquestionably constitutes a strike against Jones.[13]

### 3. N.Y.C. Police Dep't Action, Filed When Not Incarcerated: Not a Strike

Jones' IFP action in Jones v. N.Y.C. Police Dep't, No. 09 Civ. 3504 (E.D.N.Y. Dec. 15,

2009), alleging constitutional violations after police officers did not arrest individuals who were

purportedly attempting to kidnap him, was similarly dismissed for failure to state a claim.

---

[13]     The Court is aware of two cases (decided by the same judge) in which strikes were not
assigned to prior actions where supplemental state law claims had also been included in the
complaint but, unlike the related federal claims, were dismissed without prejudice. See Williams
v. Berge, 2001 WL 34377346, at *7 (W.D. Wis. Sept. 6, 2001) (dismissing § 1983 claims with
prejudice for failure to state a claim and dismissing claims that collection of DNA violated state
law without prejudice under 28 U.S.C. § 1367(c), and holding without analysis that "[b]ecause
the state law claims do not fall under one of the enumerated grounds a strike will not be recorded
against petitioner"); Love v. Jaeger, 2007 WL 324431, at *8 (W.D. Wis. June 30, 2007)
("[B]ecause petitioner's state law claims are part of the action and some of those claims have not
been dismissed for one of the reasons in § 1915(g), a strike will not be recorded against
petitioner"). There is thus potentially an open question as to whether such supplemental state
law claims constitute part of the "action" as contemplated by § 1915(g) and must also be
dismissed on enumerated grounds in order for a strike to be assigned. See infra II.A.4
(discussing whether strikes are appropriate in actions that are only partially dismissed for strike-
worthy reasons). The Court need not address this issue here as Jones did not explicitly allege
state law claims in Connolly; any hypothetical state claims were dismissed only to the extent that
a liberal reading of the complaint might reveal them. (Order of Dismissal (Dkt. No. 29), at 3).
The Court therefore considers that for the purposes of the three strikes provision, the action in
Connolly was completely dismissed under § 1915(g).

(Order of Dismissal (Dkt. No. 6)).  Importantly, however, Jones notes that he was not incarcerated at the time that he filed this action.  (Jones' Letter in Opposition (Dkt. No. 26), at 3).  For an action or appeal to be deemed a strike, it must be brought by a prisoner "while incarcerated or detained in any facility." 28 U.S.C. § 1915(g).  For purposes of the PLRA, a prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted, sentenced for, or adjudicated delinquent for, violations of criminal law." 28 U.S.C. § 1915(h).  The relevant time for determining whether a plaintiff is a prisoner for purposes of § 1915(g) is "the moment the plaintiff files his complaint." Gibson v. City Municipality of N.Y., 692 F.3d 198, 201 (2d Cir. 2012) (quoting Harris v. City of N.Y., 607 F.3d 18, 21 (2d Cir. 2010)).

Jones' initial complaint listed his domicile at the time as a private address in Brooklyn, New York and it was only subsequent to filing that Jones submitted a notice of change of address indicating that he had been taken into custody on Riker's Island.  (Complaint (Dkt No. 1) at 1; Notice of Change of Address (Dkt. No. 5)).  Therefore, because Jones was not "incarcerated or detained in any facility" when he filed his complaint on August 4, 2009, notwithstanding its dismissal for a qualifying reason, this action does not qualify as a strike under § 1915(g).

### 4. **Fischer Action, Partial Dismissal of Action – Not a Strike**

In Jones v. Fischer, No. 07 Civ. 7589 (S.D.N.Y. Aug. 7, 2008) (hereinafter referred to as Fischer), Jones brought suit in August 2007, proceeding IFP, alleging deliberate indifference to his medical needs by various correctional and law enforcement personnel.  (Complaint (Dkt No. 1)).  Then-Chief Judge Kimba Wood, acting sua sponte, dismissed without prejudice for improper venue some of Jones' claims arising out of events in North Carolina and involving four

11

defendants also located in that state.  (Order of Partial Dismissal (Dkt. No. 3)).[14]  The action

proceeded on the basis of Jones' surviving claims, which involved his detention in New York

and named New York defendants.  In August 2008, the court ultimately dismissed those claims

as well, this time with prejudice, on the grounds that Jones had failed to exhaust administrative

remedies and, alternatively, that even on the merits he had failed to state claims under Fed. R.

Civ. P. 12(b)(6).  Jones v. Fischer, 2008 WL 3174510 (S.D.N.Y. Aug. 7, 2008).  Defendants

argue that Fischer should consequently be classified as a strike against Jones based on the

August 2008 dismissal, notwithstanding the previously dismissed North Carolina claims.  (Defs.'

Rep. Mem. at 3).  Yet because those claims were undoubtedly also part of Jones' initial action

and were not dismissed on one of the grounds enumerated by the three strikes provision, the

Court must determine whether an action that is dismissed only partially on § 1915(g) grounds

can be considered a strike under the PLRA.

    The text of § 1915(g) speaks of assigning strikes based on prior *actions* or appeals, not

prior claims.  See 28 U.S.C. § 1915(g) ("[Litigant may not proceed IFP] if the prisoner has, on 3

or more prior occasions . . . brought an *action* or appeal.... ") (emphasis added).  A majority of

federal appellate courts have held that this plain language requires that the entirety of a

prisoner's action, and not merely one or more of its constituent claims, be dismissed for reasons

listed in § 1915(g) in order for the dismissal to count as a strike.  See Thompson v. Drug

Enforcement Admin., 492 F.3d 428, 432 (D.C. Cir. 2007) ("[I]t would make no sense to say –

where one claim within an action is dismissed for failing to state a claim and another succeeds on

---

[14]     Jones later refiled these claims in the Middle District of North Carolina in two separate
complaints in October and November 2008, which were themselves dismissed without prejudice.
See Jones v. Scotland Cnty. Super. Ct., No. 07 Civ. 816 (M.D.N.C. Oct. 25, 2007) (dismissing
complaint without prejudice to refiling with proper forms) and Jones v. State of N.C., No. 07
Civ. 898 (M.D.N.C. Mar. 26, 2008) (same).

the merits – that the 'action' had been dismissed for failing to state a claim."); accord Byrd v. Shannon, 715 F.3d 117, 125 (3d Cir. 2013); Tolbert v. Stevenson, 635 F.3d 646, 653 (4th Cir. 2011); Turley v. Gaetz, 625 F.3d 1005, 1010 (7th Cir. 2010); Mayfield v. Texas Dep't of Criminal Justice, 529 F.3d 599, 617 (5th Cir. 2008); Powells v. Minnehaha Cnty. Sheriff Dep't, 198 F.3d 711, 713 (8th Cir. 1999).  But see Thomas v. Parker, 672 F.3d 1182, 1184 (10th Cir. 2012); Pointer v. Wilkinson, 502 F.3d 369, 376 (6th Cir. 2007).  As the Fourth Circuit observed, "action" is used throughout the rest of § 1915 to refer to the whole lawsuit in question; there is no basis to believe that it should be interpreted only in the three strikes provision as referring to something less, such as an individual claim.  Tolbert, 635 F.3d at 651 (discussing subsections (a)(2), (b), (e)(2), and (f)(1), which all treat "action" as referring to the entire case) (citing Nat'l Credit Union Admin. v. First Nat. Bank & Trust Co., 522 U.S. 479, 501 (1998) ("[T]he established canon of construction [is] that similar language contained within the same section of a statute must be accorded a consistent meaning.")).

Courts have also noted that the "well-defined" meaning of "action" is grounded in the Federal Rules of Civil Procedure, which are explicitly referenced by § 1915(g) and consistently employ the term in the same manner.  See Tolbert, 635 F.3d at 651; Turley, 625 F.3d at 1008-09. Under Rule 3, for instance, a "civil action is commenced by filing a complaint with the court," which may of course include several claims.  Fed. R. Civ. P. 3.  More instructively, Rule 54(b) specifies that "any order or other decision . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims."  Fed. R. Civ. P. 54(b).  In other words, an action equates to no less than the sum of all the claims brought within a case, beginning from the moment of the filing of the complaint.  Dismissal of anything less than an "action" so defined would not merit a strike.

13

Although the Second Circuit has not directly addressed this issue, it has noted in discussing the "imminent danger" exception to § 1915(g) that "[n]othing in the text of § 1915 provides any justification for dividing an action into individual claims." Chavis v. Chappius, 618 F.3d 162, 171 (2d Cir. 2010) (holding that a prisoner benefitting from the imminent danger exception to the three strikes provision by virtue of one of his claims may proceed IFP with respect to all other claims raised in the action). The Circuit has thus adopted the "general interpretation underlying the majority rule." Jennings v. Fed. Bureau of Prisons, 2011 WL 6934764, at *4 (E.D.N.Y. Nov. 17, 2011), adopted, 2011 WL 6936354 (E.D.N.Y. Dec. 30, 2011). In line with this guidance, district courts in this Circuit have declined to assign strikes for partial § 1915(g) dismissals. See, e.g., McNair v. Kelly, 2013 WL 4574247, at *2 (S.D.N.Y. Aug. 26, 2013) ("[W]here suits are dismissed, in part, on grounds not contemplated by the PLRA and without prejudice, the dismissed action as a whole cannot count as a strike against the plaintiff."); see also Tafari v. Hues, 539 F. Supp. 2d 694, 697-702 (S.D.N.Y. 2008) (collecting case law, adopting the majority view, and declining to find a third strike in an earlier action where some but not all of prisoner's claims were dismissed for failure to state a claim). In Jennings, for example, the court did not assign a strike to an action that was disposed of under identical circumstances as Fischer, with some claims dismissed for improper venue and others dismissed with prejudice for failure to state a claim. 2011 WL 6934764, at *3 ("The PLRA does not count as a strike an action dismissed for improper venue.").

Arguably, treating partial dismissals as non-strikes may lead to situations where inmates "purposefully 'immunize' themselves against strikes by simply including . . . 'curable' defects in their otherwise strike-triggering complaints." Tolbert, 635 F.3d at 653 (quoting Government's brief arguing that "action" should be read also to mean individual claims). While strategic

14

pleading by the savvy litigant is certainly plausible, the theoretical possibility of such manipulation does not obviate the fact that a remediable defect in an action is still not in itself frivolous or otherwise strike-worthy as required by the text of § 1915(g). See Tafari, 473 F.3d at 443. Indeed, even trained lawyers may in good faith include improperly venued claims, particularly when pleading causes of action arising from factually complicated events involving various parties and locations. Therefore, to adopt a rule assigning strikes for partial dismissals, based on speculation about abuse and without basis in the statutory text, "would pose a serious risk of penalizing prisoners proceeding in good faith and with legitimate claims." Thompson, 492 F.3d at 437 (rejecting policy-based argument that all dismissals for lack of jurisdiction should be counted as strikes under court's inherent discretion notwithstanding the obvious meaning of § 1915(g)).[15]

Consequently, this Court follows the majority view and finds that Fischer, because it was only partially dismissed under § 1915(g), does not trigger a strike against Jones. Although his New York allegations failed to state a claim, the dismissal of Jones' North Carolina claims for improper venue is not the type of final termination, on the merits, that the Second Circuit has held is contemplated by the three strikes provision. See Snider, 199 F.3d at 111.

### 5. 2000 City of N.Y. Action, Dismissal of Fee-Paid Action – Not a Strike

The Court now turns to the final possibility of a third and dispositive strike against Jones, a 2000 action he brought in Jones v. City of N.Y., No. 00 Civ. 6872 (S.D.N.Y. Sept. 13, 2000)

---

[15]    Courts are not without recourse should they face attempts at circumvention of the three strikes rule. As the Fourth Circuit explained, "[d]istrict courts have some redress against prisoners immunizing themselves from strikes by tacking on claims containing curable defects" as "a court can dismiss [such actions] where evidence of frivolousness or malice exists." Tolbert, 635 F.3d at 653 (internal quotation marks and citations omitted). Indeed, the PLRA elsewhere provides that courts shall review and dismiss actions on such a basis, and this authority serves as a bulwark against potential attempts at improper "immunization." See 28 U.S.C. § 1915(e)(2)(B)(i).

(hereinafter <u>City of N.Y.</u>). Jones' complaint, alleging sexual harassment by a female assistant

district attorney, was dismissed in its entirety <u>sua</u> <u>sponte</u> by then-Chief Judge Michael Mukasey

as it was barred by the statute of limitations and thereby failed to state a claim.[16] Jones affirms,

and the docket for the case reflects, that he prepaid the filing fee in full in this action. (Jones'

Affirmation in Opposition of Defs.' Motion (Dkt. No. 21), at ¶ 7; Docket Text (Dkt. No. 1)

(providing receipt number for filing fee of $150)). As a result, <u>City of N.Y.</u> raises the question

of whether a prior action dismissed for a strike-worthy reason but in which the prisoner did not

proceed IFP may be properly deemed a strike.[17]

    While the Second Circuit has not directly addressed this issue, four other courts of

appeals have determined that a prisoner may accrue strikes for the purposes of § 1915(g) in past

actions regardless of whether he proceeded IFP or prepaid the filing fee. See <u>Byrd v. Shannon</u>,

---

[16]    There is conflicting case law about whether dismissal of an action as time-barred merits a strike. <u>Compare</u> <u>Myles v. United States</u>, 416 F.3d 551, 553 (7th Cir. 2005) (because the statute of limitations is an affirmative defense, dismissal of a complaint as time-barred is not a dismissal for failure to state a claim and not strike-worthy), <u>with</u> <u>Palmer v. N.Y.S. Dep't of Corr.</u>, 2007 WL 4258230, at *6 (S.D.N.Y. Dec. 4, 2007) (dismissal based on expiration of statute of limitations counts as strike). However, courts may properly dismiss <u>sua</u> <u>sponte</u> on Rule 12(b)(6) grounds a complaint that reveals on its face an affirmative defense like the statute of limitations; for purposes of § 1915(g), an express specification that such a dismissal was for a failure to state a claim is enough to elicit a strike. <u>See</u> <u>Thompson</u>, 492 F.3d at 438-39 ("[E]ven though a court may believe that a previous court erred by dismissing . . . under Rule 12(b)(6) or by failing to do so, all that matters for the purpose of counting strikes is what the earlier court actually did, not what it ought to have done.").

[17]    In an order of service issued in <u>Jones v. Avanzato</u>, No. 12 Civ. 2087 (S.D.N.Y.), one of the separate actions filed by Jones currently pending in this District, Judge Edgardo Ramos declined to count as strikes two actions – <u>Jones v. City of N.Y.</u>, No. 99 Civ. 8281 (E.D.N.Y. March 16, 2000) and <u>Jones v. Comm'r of N.Y.C. Dep't of Corr.</u>, No. 00 Civ. 370 (E.D.N.Y. March 16, 2000) – which were ultimately dismissed with prejudice, because Jones affirmed that he had prepaid the filing fees in those cases. (Order of Service (Dkt. No. 13), at 2; Jones' Affirmations (Dkt. Nos. 8 and 14)). Defendants do not rely on these two actions in their papers supporting their motion, although they do rely on <u>City of N.Y.</u> In any event, for the reasons set forth herein, the Court reaches the same conclusion as Judge Ramos. <u>See also</u> <u>Liner v. Fischer</u>, 2012 WL 2847910, at *3 (S.D.N.Y. July 11, 2012), <u>adopted</u>, 2012 WL 4849130 (S.D.N.Y. Oct. 12, 2012) (dismissed fee-paid actions do not constitute strikes).

715 F.3d 117, 123 (3d Cir. 2013); Burghart v. Corr. Corp. of Am., 350 F. App'x 278, 279 (10th

Cir. 2009); Hyland v. Clinton, 3 F. App'x 478, 479 (6th Cir. 2001); Duvall v. Miller, 122 F.3d

489, 490 (7th Cir. 1997). Most recently, the Third Circuit looked to the statutory language of

§ 1915(g) and found that it "has a reasonably plain meaning" that supports this result: because

the reference to a strike-incurring "action or appeal" makes no distinction about payment of fees

either way, the provision "refers to both IFP and non-IFP actions or appeals." Byrd, 715 F.3d at

123. In addition, the Tenth Circuit reasoned that Congress' purpose in enacting the PLRA of

curbing resource-abusive prisoner litigation would be served by applying strikes to any type of

frivolous action, fee-paid or not. Burghart, 350 F. App'x at 279 ("These ends are achieved by

preventing a prisoner who has paid filing fees in past frivolous law suits from proceeding IFP,

just as they are achieved by preventing a prisoner from proceeding IFP for the fourth or fifth

time.").

  This Court respectfully disagrees with these conclusions. To start, the text of § 1915(g),

read in its entirety, does not yield as plain a meaning as the Byrd court suggests. The three

strikes provision reads in relevant part: "In no event shall a prisoner bring *a civil action or*

*appeal a judgment in a civil action or proceeding under this section* if the prisoner has, on 3 or

more prior occasions, while incarcerated or detained in any facility, brought *an action or appeal*

. . . that was dismissed [for frivolousness, maliciousness, or failure to state a claim]." 28 U.S.C.

§ 1915(g) (emphasis added). While the second "action or appeal" is indeed worded generally

and is silent about fees and IFP status, its meaning turns on context: a complete reading of the

entire sentence indicates that it is a shorthand form referring back to the earlier use of the phrase

"a civil action or appeal . . . under this section" – i.e., an action or appeal *brought under the IFP*

*section*. Otherwise stated, the second use of "action or appeal" also refers to cases filed where the prepayment of fees was waived under the auspices of the IFP statute.

This reading of § 1915(g), making the meaning of the second occurrence of "action or appeal" dependent on the first, was in fact explicitly adopted by the Second Circuit recently in Jones v. Smith, 720 F.3d 142 (2d Cir. 2013) ("Smith").  Having previously held in Reyes v. Keane, 90 F.3d 676, 678 (2d Cir. 1996), that habeas petitions were not "civil actions" as defined by the first portion of § 1915(g), the Second Circuit considered whether a prior dismissal of a habeas petition could nonetheless count as a strike against a prisoner pursuant to the latter part of the subsection.  The Smith Defendants contended, consistent with the approach to the text taken by the Third Circuit in Byrd, that such an interpretation was plausible because "'action' and 'appeal' in the second half of the three strikes provision are not modified by the word 'civil.'" Smith, 720 F.3d at 146.

The Second Circuit rejected this "strained interpretation," however, holding that "the most natural reading of the three strikes provision is that the term 'action or appeal' in the second half of the provision is simply an abbreviated reference to the term 'civil action or appeal'" appearing earlier in the same sentence.  Id. ("Although Congress certainly could have reiterated its intent by repeating the same language over and over again, there was no need for it to do so because it is clear that, read as a whole, the sentence applies only to *civil* actions and appeals in *civil* actions.").  The Circuit's basic point that the two instances of "action or appeal" cannot be read in isolation is instructive.  If, as it held, the second occurrence of "action or appeal" necessarily imputes the adjective "civil" from the first, the same logic calls for the modifying phrase "under this section" to be carried over as well.

18

That § 1915(g) assigns strikes for actions or appeals brought *under the IFP section*, and not for all actions or appeals, is also more consistent with the legislative structure, purpose, and history of the PLRA.  While it is beyond cavil that courts must first look to the language of the statutory text in construing acts of Congress, where terms are "ambiguous or unclear," courts "may consider legislative history and other tools of statutory interpretation." Nwozuzu v. Holder, 726 F.3d 323, 327 (2d Cir. 2013) (citations omitted).  As is clear from the very necessity of the Second Circuit's analysis in Smith, the precise meaning of "action or appeal" as used the second time in § 1915(g) invites more ambiguity than might seem evident at first.  In such an event, "[t]he text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003) (citing Robinson v. Shell Oil Co., 519 U.S. 337, 341(1997)); see also Pettus v. Morgenthau, 554 F.3d 293, 297 (2d Cir. 2009) ("[W]hen construing the plain text of a statutory enactment, we do not construe each phrase literally or in isolation.  Rather, we attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole.").

The Sixth Circuit conducted this very type of analysis in determining whether § 1915(e)(2), the related subsection of the IFP statute directing district courts to dismiss prisoner actions for the same strike-incurring reasons set forth in § 1915(g), was intended to apply to fee-paying as well as IFP litigants. Benson v. O'Brian, 179 F.3d 1014, 1016-17 (6th Cir. 1999).[18] The court found that it did not, looking foremost to the provision's location within the overall

---

[18]    Like § 1915(g), § 1915(e)(2) is not explicit as to whether its scope reaches non-IFP actions. See 28 U.S.C. § 1915(e)(2) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue; or the action or appeal is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.").

context of § 1915, which is entitled "Proceedings in forma pauperis." Id. at 1016 ("To our knowledge, no other part of § 1915 has been applied to actions not pursued in forma pauperis."). Indeed, the Supreme Court has held that although "a subchapter heading cannot substitute for the operative text," titles and section headings like § 1915's are important tools for interpreting statutes. Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008). The Third Circuit also relied on the context provided by the § 1915 heading to opine that "[a]lthough the language of § 1915(e)(2) does not expressly limit the provision's reach to in forma pauperis claims, we believe Congress intended it to be so limited." Grayson v. Mayview State Hosp., 293 F.3d 103, 109 n.10 (3d Cir. 2002). The same logic should apply equally to subsection § 1915(g). Moreover, that the various subsections of § 1915 were meant to deal uniquely with actions brought IFP is further supported by the parallel existence of § 1915A, a separate statute that by contrast *does* apply to all prisoner civil actions, requiring courts to screen filings for dismissal regardless of fee-paying status. See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007); 28 U.S.C. § 1915A ("The court shall review . . . a complaint in a civil action in which a prisoner seeks redress. . ..").

Finally, while the PLRA on the whole was "designed to stem the tide of egregiously meritless lawsuits" by prisoners, Tafari, 473 F.3d at 443, Congress had a more specific concern with the three strikes provision: "to prevent prisoners from abusing the IFP privilege." Adepegba v. Hammons, 103 F.3d 383, 387 (5th Cir. 1996) (§ 1915(g) codified existing judicial authority to punish improper use of IFP status); Roller v. Gunn, 107 F.3d 227, 230 (4th Cir. 1997) (noting that IFP filings, 75 percent of them by prisoners, accounted for almost half of the circuit's case load in a recent year and that Congress aimed to target this problem specifically). This is an important distinction. If the statutory goal of the three strikes provision had been to

target frivolous filings generally, it would make little difference whether a non-meritorious litigant were penalized with a strike for a fee-paid or a fee-waived action; indeed, both should be penalized in such a case. See Burghart, 350 F. App'x at 279. Yet because Congress' focus was frivolous *IFP filings* in particular, the intended reach of § 1915(g) must be understood accordingly. See Roller, 107 F.3d at 233 ("[T]he goal of the Act – *curbing frivolous IFP litigation* – is clearly proper.") (emphasis added).

A chief problem that the PLRA was designed to address, as articulated in the legislative history by its main sponsors, was the lack of economic disincentive to keep the IFP prisoner from bringing repeat, frivolous litigation. As Senator Jon Kyl explained, "[f]or a prisoner who qualifies for poor person status, there is no cost to bring a suit and, therefore, no incentive to limit suits to cases that have some chance of success." 141 Cong. Rec. S7498-01 at S7526 (May 25, 1995). Senator Robert Dole added that indigent prisoners who are granted fee waivers, unlike other fee-paying citizens, do not "recognize that there could be an economic downside to going to court." Id. at S7525 (singling out the "preferential treatment" that prisoner IFP litigants thereby receive). The three strikes provision corrected this anomaly by introducing a cost and incentive structure for the first time to the fee-waived litigant. By contrast, a prisoner who has prepaid the filing fee has already grappled with the same disincentives as any other fee-paying litigant, and indeed has likely made the determination (even if ultimately incorrect) that his suit has enough possibility of success to merit the cost and effort. Thus, he is fully aware of any potential "economic downside"; to assign him a strike would penalize a non-abusive, permissible activity that is not the intended target of the three strikes provision.

Accordingly, the Court concludes that strikes may not be assigned under § 1915(g) in actions where the prisoner fully prepaid the filing fee. The natural reading of § 1915(g),

consistent with the Second Circuit's holding in <u>Smith</u> that the two statutory uses of "action or appeal" must be understood to have the same meaning, suggests that only actions previously brought IFP are eligible to trigger strikes. The contrary result reached by the four appellate courts is premised on an understanding of the statutory text that is incompatible with <u>Smith</u>. An interpretation that finds no basis for a strike in a fee-paid case is also more in line with the legislative history and purpose of the PLRA: to target abusive IFP filings in particular within the broader context of curtailing frivolous prisoner litigation.

For these reasons, because Jones prepaid the filing fees in <u>City of N.Y.</u>, he may not be subject to a strike based on this action regardless of the grounds on which it was dismissed. Thus, based on this determination, and the Court's analysis of the four other potentially strike-incurring actions posited by Defendants, Jones has accumulated only two of the three strikes necessary to revoke his IFP status.

### B. Jones' Motion for Default Judgment

Jones moves for entry of a default judgment against Defendants Ruvikumar and Mount Vernon. Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). It is elementary, however, that the obligation to plead or otherwise defend is triggered only when a party is first served with the summons and complaint or waives service. <u>See</u> Fed. R. Civ. P. 12(a)(1). The Marshal's Process Receipt indicates that Mount Vernon was not served with the summons and complaint in this case until August 19, 2013 (Dkt. No. 27), more than a month after Jones moved for entry of a default judgment against it. Therefore, Mount Vernon cannot possibly have been in default when Jones made his motion.

22

In any event, in his affirmation submitted in support of his motion, Jones averred that Mount Vernon has filed for bankruptcy protection. (Jones Affirmation (Dkt. No. 18), at 3). An independent search by the Court has confirmed that Mount Vernon did in fact begin Chapter 11 proceedings in the U.S. Bankruptcy Court for the Southern District of New York on May 29, 2013; the case is jointly administered with the Chapter 11 petition of the Sound Shore Medical Center of Westchester, of which Mount Vernon is an affiliate, and remains pending. See In re: Sound Shore Medical Center of Westchester, et al., No. 13-22840 (S.D.N.Y.). Accordingly, because the U.S. bankruptcy code stays the commencement or continuation of any litigation against a debtor, no further proceedings may continue in this action against Mount Vernon until the bankruptcy stay is lifted. See 11 U.S.C. § 362(a).

As to the entry of default sought against Ravikumar, Ravikumar submitted an answer to Jones' complaint on July 19, 2013. Jones evidently believes that Ravikumar's filing was tardy, as the Marshal's Process Receipt indicated that his answer was initially due by July 8, 2013. (Dkt. No. 10). However, on June 24, 2013 the Court endorsed a letter from the Office of the Attorney General of New York, granting an extension to July 19 for Defendants to respond. (Letter from Asst. Atty. Gen. Julia H. Lee (Dkt No. 9)). While at the time of the letter the Office of the Attorney General was only representing Moorjani, the letter indicated that it also anticipated representing Ravikumar shortly and explicitly made the request for an extension on his behalf as well. (Id. at 1). Ravikumar therefore filed a timely pleading in response to Jones' complaint and did not default.[19]

---

[19]     Even had Ravikumar's deadline remained July 8 and he had been late in filing his answer, the Court's determination would be unchanged. "It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001). Whether to grant a default judgment is left to the sound discretion of the court, see Shah v. N.Y. Dep't of Civil Serv., 168

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to revoke Jones' IFP status and Jones'

motion for default judgment against Ravikumar and Mount Vernon should both be denied.

**PROCEDURE FOR FILING OBJECTIONS**
**TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Paul A. Crotty and the undersigned, United States Courthouse, 500 Pearl Street, New York, New

York 10007.  Any requests for an extension of time for filing objections must be directed to

Judge Crotty.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL**

**RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE**

**REVIEW**.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985);

<u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596

F.3d 84, 92 (2d Cir. 2010).  If Jones does not have access to cases cited herein that are reported

on Westlaw or Lexis, he should request copies from Defendants.  <u>See</u> <u>Lebron v. Sanders</u>, 557

F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
       December 13, 2013

                                 JAMES L. COTT
                                 United States Magistrate Judge

---

F.3d 610, 615 (2d Cir. 1999), and it would be an abuse of that discretion to do so in this case on
the basis of an answer that is untimely by a matter of days.

**A copy of this Report and Recommendation has been sent to:**

Glynn Jones
2303 Bedford Avenue, Apt. #2
Brooklyn, NY 11226